Emoshie S. UMOJA, aka Emo
S. Umoja, Appellant,

v.

The STATE of Texas, State.

No. 2–96–236–CR.

Court of Appeals of Texas,
Fort Worth.

Oct. 16, 1997.

Opinion Granting Rehearing April 16, 1998.

Allan K. Butcher, Allan K. Butcher, Jr., Law Offices of Allan K. Butcher, Fort Worth, for Appellant.

Tim Curry, Crim. Dist. Attorney, Charles M. Mallin, Chief of Appellant Sec., Edward L. Wilkinson, Jamie Cummings, Martin Purselley, Assistant Criminal District attorneys, Fort Worth, for Appellee.

Before CHARLES F. CAMPBELL (Sitting by Assignment), DAY and LIVINGSTON, JJ.

## OPINION

PER CURIAM.

Appellant was convicted by a jury of the offense of murder. At appellant's option, the trial court assessed punishment at thirty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises seven points on appeal. We will abate this cause to the trial court for a hearing on the issue of whether the judgment should be corrected *nunc pro tunc.*

Because appellant challenges the factual sufficiency[1] of the evidence, a brief recitation of the facts is in order. The record reflects that on September 12, 1994, appellant, along with about fifteen other young men and women gathered for a party at a house. Among the partygoers were Jose Martinez, Dejuan Allen, Tracey and Robert McCoy, Tony Lopez, Edwon Tubbs and appellant. The group, including appellant, was drinking heavily and making trips to a nearby convenience store to buy alcoholic beverages. Outside the convenience store Martinez, Lopez, and Tubbs encountered the victim, a homeless man. For reasons unclear from the record, the three began to beat the victim with their fists. They continued to beat and kick the victim as he lay unconscious on the ground. They drug the victim behind a restaurant, where they were joined by appellant. Appellant joined in the assault, striking the victim with his fist and feet. Tubbs slammed a concrete brick on the victim's head. Appellant then took up further assault on the victim, until his friends finally restrained him.

An autopsy conducted on the victim revealed that his wounds were consistent with having been struck with a fist or kicked with feet. The wound caused by the brick was the most serious, but no single wound caused the victim's death. According to the medical examiner, each of the head wounds was a factor contributing to the victim's death.

### Appellant's Argument

In his second point, appellant challenges the factual sufficiency of the evidence. Appellant essentially argues that if this court finds that appellant joined the attack on the victim before Tubbs hit the victim with the brick, then appellant only caused superficial wounds rather than death. However, appellant argues, if he struck the victim after Tubbs hit the victim with the brick, then appellant would, at most, be guilty of abuse of a corpse.

### Standard of Review

In *Clewis v. State,* 922 S.W.2d 126 (Tex. Crim.App.1996), the Court of Criminal Appeals held that in considering the factual sufficiency question, an appellate court should review the factfinders' weighing of the evidence and may disagree with the factfinders' determination, but the appellate court must not substitute its judgment for that of the trier of fact. *Id.* at 133. In a factual sufficiency review, the court of appeals views all the evidence without the prism of "in the light most favorable to the prosecution" and should set aside the verdict only if it is so contrary to the overwhelming weight of the

---

1. Appellant does not challenge the legal sufficiency of the evidence.

evidence as to be clearly wrong and unjust. *Id.* We should find factual insufficiency only where we can "clearly state why the jury's finding is so factually insufficient as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias." *Id.* at 135.

### Application of Law to Facts

■ In this case, all but one witness testified that they saw appellant strike or kick the victim as he lay on the ground. The only witness who did not testify that he saw appellant strike the victim admitted that he did not go down the alley where the victim lay and was unaware of appellant's role at that time. The medical examiner testified that each of the victim's head and face wounds was a contributing factor to his death. He further testified that each of the wounds was inflicted while the victim was alive. The mere fact that appellant did not inflict the most damaging blow to the victim does not relieve him of responsibility for the victim's murder. Under this evidence, we cannot find that the verdict is so contrary to its overwhelming weight as to be clearly wrong or unjust. We find the evidence to be factually sufficient. Appellant's second point is overruled.

### Rule 404(b)

In his first point, appellant avers that the trial court erred in admitting testimony, during the State's direct evidence on guilt, that appellant had committed a prior attack on the victim.[2] Basically he claims that this testimony of extraneous bad conduct was inadmissible under TEX.R.CRIM. EVID. 404(b),

because the State failed to provide "reasonable" notice[3] of its intent to introduce this evidence. The State does not contest the sufficiency of the notice[4] but rather argues that rule 404(b) does not apply. Essentially the State argues, as it did at trial, that the evidence was offered under TEX.CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon Supp.1997).[5]

The State argues that there is a direct conflict between article 38.36(a) and rule 404(b), at least in murder cases, in that article 38.36(a) allows extraneous bad conduct evidence to be admitted without the requirement of notice, while rule 404(b) contains a notice requirement applicable to all criminal cases. The State contends that legislative enactments in the Texas Code of Criminal Procedure take hierarchical precedence over the rules promulgated by the Court of Criminal Appeals in the Texas Rules of Criminal Evidence, citing TEX.R.CRIM. EVID. 101(c). Thus, the State reasons, article 38.36(a) would take precedence over rule 404(b) and in murder cases, no notice should be required to introduce extraneous bad acts as long as they fit the criteria contained in article 38.36(a). While this argument has some surface appeal, we reject it.

### Applicable Law

Whether article 38.36(a) takes precedence over the rule 404(b) notice requirement in murder cases is an issue that has not been previously addressed by this court. Appellate courts in this state have, however, discussed a critical threshold question: whether article 38.36(a) and rule 404(b) as a general proposition can co-exist in Texas jurisprudence. In *Werner v. State*, 711 S.W.2d 639

---

**2.** It is undisputed that the State notified appellant on the morning of trial that it intended to offer this evidence. It is also undisputed that this extraneous conduct took place approximately a month before the victim was killed.

**3.** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes ... provided, upon timely request by the accused, reasonable notice is given in advance of trial of intent to introduce in the State's case in chief such evidence other than that arising in the same transaction." TEX. R.CRIM. EVID. 404(b).

**4.** *See generally, e.g., Espinosa v. State,* 853 S.W.2d 36 (Tex.Crim.App.1993).

**5.** "In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense." TEX.CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon Supp.1997).

(Tex.Crim.App.1986), *modified on other grounds, Hamel v. State,* 916 S.W.2d 491 (Tex.Crim.App.1996) the defendant attempted to introduce evidence of post-traumatic stress disorder, in a murder case, ostensibly to show a perception on his part that he needed to resort to deadly force for selfprotection. *Id.* at 644. The Court of Criminal Appeals held that the statute [6] did not broaden or in any way affect the rules of evidence that apply, or the way in which they apply in any given homicide case. *Id.* at 646. Accordingly, before a court can properly admit evidence of an extraneous offense under now article 38.36(a), it must first find the evidence relevant to a material issue other than the defendant's character. *See Hernandez v. State,* 914 S.W.2d 226, 232 (Tex.App.—Waco 1996, no pet.).

◼ In *Hernandez,* the Waco Court of Appeals directly confronted the issue before us today. In that case, the State made the same argument the State makes here today—that the notice provision of rule 404(b) did not apply because of the existence of now article 38.36(a). The Waco court applied the reasoning from *Werner* and also from *Fielder v. State,* 756 S.W.2d 309, 318 (Tex.Crim. App.1988), to find that the notice requirement of rule 404(b) is applicable. *Hernandez* 914 S.W.2d at 234–35. We believe this reasoning is sound. Having applied relevancy requirements of TEX.R.CRIM. EVID. 401, et. seq., to article 38.36(a), it would make little sense to pick and choose between the provisions of rule 404(b) under the guise that a statute takes precedence over a rule, in order to conclude that the notice provision does not apply to evidence admitted under article 38.36(a). In holding that the notice provision of rule 404(b) is applicable to article 38.36(a), we are not seeking to abrogate the legislative intent of article 38.36(a). We simply find that its application in murder cases is limited by rule 404(b), including the notice requirement, and we so hold.

◼ Having found that the notice provision of rule 404(b) is applicable to extraneous bad conduct under article 38.36(a), we must consider whether the State's notice in this case was timely. Both sides agree that the notice was given to appellant on the day of trial. The purpose of the notice provision is to adequately apprise the defendant of the extraneous conduct the State intends to introduce at trial so the defendant can prepare for same. *See Hernandez,* 914 S.W.2d at 234. The rule itself provides that notice be given "in advance of trial." TEX.R.CRIM. EVID. 404(b). In the instant case, notice was given on the day of trial. Therefore, notice to appellant was not timely given. *See Hernandez,* 914 S.W.2d at 234. The trial court erred in admitting the extraneous offense.

◼ Having found error, we must determine if the error contributed to the conviction or punishment. TEX.R.APP. P. 44.2(a). We focus on the error and its effect on the process whereby the jurors apply the law to the facts to reach a verdict, rather than on the result. *See Harris v. State,* 790 S.W.2d 568, 588 (Tex.Crim.App.1989). We examine whether the trial was essentially a fair one. *See id.* If the error was of a magnitude that it disrupted the jurors' orderly evaluation of the evidence, no matter how overwhelming the overall evidence might have been, then the conviction is tainted. *See id.* We must isolate the error and all its effects, then ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. *See id.* We consider the source of the error, the nature of the error, whether and to what extent it was emphasized by the State, its probable collateral implications, and other considerations suggested by the facts of the case. *See id.* at 587. In determining whether a rational trier of fact might have reached a different conclusion, we consider how much weight a juror would probably place on the error and its probable impact on the jury in light of the existence of the other evidence. *See id.* Where the error was induced by action of the

---

**6.** Act of June 14, 1973, 63rd Leg., R.S., ch 399, § 1, 1974 Tex. Gen Laws 883, 913, *amended by* Act of June 14, 1973, 63rd Leg., R.S., ch 426, § 1, 1974 Tex. Gen. Laws 1122, 1124, *amended by,* Act of April 29, 1991, 72nd Leg., R.S., ch. 48, § 1, 1991 Tex. Gen. Laws 474, 475, *deleted by,* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3614 (current version at TEX.CODE CRIM. PROC. ANN. art. 38.36(a) (Vernon Supp.1997)).

prosecution, we must determine whether declaring the error harmless would encourage the State to repeat it with impunity. *See id.*

In this instant case, the source of the error was the trial court's admission of testimony that appellant hit the victim about a month before the murder. The witness testified that both were drunk, and had an argument before the blow was struck. The testimony in question was simple, direct and occupied about a page in the record. The nature of the error was appellant's claim that he did not have time to prepare for this testimony, although it is undisputed that he did not request a continuance. The record also shows the State erroneously believed that the testimony was admissible under article 38.36(a)—an issue just this day settled. The record reflects that after this testimony was presented in the State's case in chief, the State never again mentioned it, including no allusion to it at final argument.

In determining the existence of collateral implications from the trial court's error, we look to matters such as the disparaging of a defense or impact on sentencing. *See Higginbotham v, State,* 807 S.W.2d 732, 737 (Tex.Crim.App.1991). The defense presented in this case was essentially that appellant was guilty only of abusing a corpse, not of murder. There was no claim that appellant had not participated in the attack on the victim. There was also little doubt that a group of assailants along with appellant had previously known the victim prior to the attack. It is doubtful, then, that the extraneous act of hitting the victim a month earlier had much collateral impact on the jury's verdict. Because the punishment was assessed by the trial court, no impact occurred in that respect.

Having isolated the error and all its effects, we now ask whether a rational trier of fact might have reached a different result without the error. *See Harris,* 790 S.W.2d at 588. In doing so, we consider how much weight a juror would probably place on the error and its probable impact on the jury in light of the existence of the other evidence. *See id.*

The record in this case contains no evidence that the jury actually attributed significance to the extraneous conduct at issue. The other evidence in the case was considerable, and the only issue for the jury to decide was what offense appellant committed against the victim——murder, or some lesser included offense. There was no issue of identity, and virtually no issue of intent to assault the victim. In view of these factors and the other evidence presented, we do not believe the jury would have reached a different result without the error and its effects. We find that the error was harmless and overrule point one.

■ In points three and four, appellant claims the trial court erred in failing to adequately apply the law of parties to the facts of the case. Appellant essentially argues that the evidence showed that if he was guilty of a crime, such could only have been shown by the utilization of the law of parties. *See* TEX. PENAL CODE ANN. § 7.02 (Vernon 1994). He argues that the trial court failed to fully incorporate the law of parties into the application paragraph of the court's charge, and instead, inserted the phrase "as that term has been herein defined." [7] He further asserts that this failure amounted to both some harm and egregious harm to him. The State counters that the evidence was sufficient to prove appellant's guilt as a principal actor, rendering the absence of an application of the law of parties inconsequential. We agree with the State.

### Applicable Law

■ As the State argues, the threshold question is whether the evidence is sufficient to support the conviction of appellant as a principal actor. TEX. PENAL CODE ANN. § 6.04(a) (Vernon 1994) provides:

A person is criminally responsible [for an offense] if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

---

7. The trial court was obviously referring back to the abstract definitions in the charge.

*Id.* Under this section, two combinations may exist to satisfy the requisite causal connection between appellant's conduct and the harm that followed: (1) the [appellant's] conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the [appellant's] conduct and the other cause *together* may be sufficient to have caused the harm. *Robbins v. State,* 717 S.W.2d 348, 351 (Tex.Crim.App. 1986). Section 6.04(a) further defines and limits the "but for" causality for concurrent causes by the last phrase, "unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.* at 351. If the additional cause, other than the defendant's conduct, is clearly sufficient by itself, to produce the result and the defendant's conduct, by itself, clearly insufficient, then the defendant cannot be convicted. *Id.*

### Application of Law to Facts

 The medical examiner could not say with any degree of certainty which of the blows caused the death of the victim. He did state that all the blows to the victim contributed ultimately to his death. Essentially, he concluded that no one wound inflicted on the victim was the cause of his death, and that each wound was a concurrent cause of death. Because no other concurrent cause was "clearly sufficient" to cause the victim's death, appellant was criminally responsible for it as a principal actor. *See id.* Even assuming arguendo that the trial court erred in the submission of the application paragraph, where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless. *See Williams v. State,* 942 S.W.2d 787, 788 n. 3 (Tex.App.— Fort Worth 1997, no pet.). Points three and four are overruled.

In his fifth point, appellant claims the trial court erroneously denied his *Batson* [8] challenge to the State's peremptory challenge of a black venireman, Fuller. During a *Batson* hearing, the prosecutor explained that Fuller was struck because he had ranked rehabilitation as the primary objective of the criminal

justice system. Appellant contends that because the trial court, rather than the jury, was to assess punishment in the case, the State's proffered reason was pretextual since it was unrelated to the case on trial.

### Applicable Law

Our task is to review the trial court's decision in a *Batson* hearing by utilizing the clearly erroneous standard. *See Wright v. State,* 832 S.W.2d 601, 604 (Tex.Crim.App. 1992). We are not to disturb the trial court's finding unless the record leaves us with a definite and firm conviction that the trial court was in error. *See id.*

In *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (per curiam), the United States Supreme Court employed a three-step process to determine whether race-based strikes were exercised: (1) the opponent of a peremptory challenge must make out a prima facie case of racial discrimination; (2) the burden then shifts to the proponent of the strike to come forward with a race-neutral explanation; and (3) if a race-neutral explanation is tendered, the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination. *Id.* at 767, 115 S.Ct. at 1770– 71, 131 L.Ed.2d at 839. While we are mindful that in *Batson* itself the Supreme Court suggested that the race-neutral reason had to be case-based, in *Purkett* that Court held that "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *See id.* at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839.

### Application of Law to Facts

 The prosecutor elaborated on his decision to strike Fuller by stating that the juror's views on the part played by rehabilitation in the criminal justice system tended to indicate whether Fuller was "lenient on crime or hard on crime." So under step two of the *Purkett* analysis, the prosecutor offered a facially race-neutral reason for his strike. Under step three the trial court was to determine the credibility of the prosecu-

---

**8.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

tor, and implicitly at least, it found that the prosecutor's explanation was credible and not motivated by discriminatory intent. Given the facial neutrality of the prosecutor's statement and the trial court's implicit finding of its credibility, we cannot say that the trial court's decision to deny appellant's *Batson* challenge was clearly erroneous.[9] Point five is overruled.

### Affirmative Finding

In points six and seven, combined in appellant's brief, he complains that the trial court erred in entering an affirmative finding of the use of a deadly weapon in the judgment of conviction. The judgment in this case recites that the "jury affirmatively finds that the defendant used or exhibited a deadly weapon, to-wit: a brick, a piece of concrete block, and his hand and foot during the commission of the offense or during the immediate flight therefrom." The indictment in this case alleged the commission of murder, in two separate paragraphs. Each of the two paragraphs is followed by a paragraph alleging that appellant used or exhibited a deadly weapon during the commission of the offense alleged. The verdict form signed by the jury foreman simply stated that the jury found appellant guilty of murder "as charged in the indictment."

Appellant contends that the trial court erred in entering this finding because the charge to the jury authorized the jury to find appellant guilty either as a principal actor or as a party to the offense, and given such facts, a separate deadly weapon issue must be submitted to the jury during punishment to authorize an ultimate deadly weapon finding. Because this was not done, the deadly weapon finding was entered erroneously. We agree. There was no affirmative finding by the jury, and the State concedes as much. The trial court erroneously found that the jury made an affirmative finding of the use or exhibition of a deadly weapon. *See Bruton v. State,* 921 S.W.2d 531, 538 (Tex.App.—Fort Worth 1996, pet. ref'd).

The only disagreement between the parties concerns the remedy. Appellant argues that the affirmative finding should be in all things deleted. The State contends the cause should be abated. We agree with the State. In this case, the trial court, upon the election of appellant, assessed punishment in the case. Therefore, the trial court, as factfinder on punishment, had the authority to make a deadly weapon finding. *See Flores v. State,* 690 S.W.2d 281, 283 (Tex.Crim.App. 1985). As the State correctly notes, it is impossible to tell from the record whether the trial court actually made an independent fact finding as to the deadly weapon usage, making the judgment entry a clerical error, or whether the trial court mistakenly believed a finding could be made based on the jury's general verdict of guilty of murder "as charged in the indictment." Therefore the proper remedy is to abate the case for a hearing to determine whether a *nunc pro tunc* order to correct a clerical error is proper, or whether the error was a product of judicial reasoning and therefore not to be disturbed. *See State v. Bates,* 889 S.W.2d 306, 309–10 (Tex.Crim.App.1994).

Accordingly, the trial court is to conduct a hearing, with appellant, his counsel, and the court reporter present to determine whether or not a *nunc pro tunc* order correcting the judgment is proper in this case. The trial court shall file a record of the hearing in this court on or before November 26, 1997. On our receipt of the supplemental record, the judgment of this court shall issue.

This cause is abated to the trial court for proceedings consistent with this opinion.

### OPINION ON REHEARING

PER CURIAM.

Appellant was convicted by a jury of the offense of murder. At appellant's option, the trial court[1] assessed punishment at thirty years' confinement in the Institutional Division of the Texas Department of Criminal

---

9. Although not precisely on point, the same conclusion has been reached by two of our sister courts. *See Parramore v. State,* 853 S.W.2d 741, 744–45 (Tex.App.—Corpus Christi 1993, pet.

ref'd); *Brooks v. State,* 894 S.W.2d 843, 846 (Tex.App.—Tyler 1995, no pet.).

1. Appellant's trial was before a visiting judge.

Justice. On original submission, in addressing appellant's first point, we found that the trial court had committed error in allowing the State to present to the jury an extraneous bad act, in the guilt/innocence phase of the trial, pursuant to TEX.R.CRIM. EVID. 404(b), because the State had failed to give appellant timely notice as required by rule 404(b). *See Umoja v. State*, 965 S.W.2d 3, 6 (Tex.App.—Fort Worth 1997, no pet. h.) We found, however, that the error was harmless pursuant to TEX.R.APP. P. 44.2(a). *See id.* at 8. The State filed a motion for rehearing, arguing that we used the wrong harmless error standard in analyzing the error reflected in appellant's point one. The State contends that we should have employed the harmless error standard contained in TEX. R.APP. P. 44.2(b) to analyze the harm done by the admission of the extraneous bad act. We agree and we grant the State's motion for rehearing.[2]

▇▇ Having found that the trial court committed error, we must determine whether the error is constitutional[3] or other error that could have affected the appellant's substantial rights.[4] Although rule 404(b) of the Texas Rules of Criminal Evidence and rule 404(b) of the Federal Rules of Evidence are largely identical, the notice provisions of the two rules differ. The federal rule provides that notice may be given during trial if good cause exists for not having given pre-trial notice. *See* FED. R. EVID. 404(b). Whereas the state rule requires that, upon timely request by the accused, the State give reasonable notice in advance of trial of its intent to introduce, in its case in chief, evidence of extraneous offenses other than those arising in the same transaction. *See* TEX.R.CRIM. EVID. 404(b).[5] Obviously then the notice pro-

vision in rule 404(b) is a creature of state law, promulgated by our court of criminal appeals, and is not of constitutional dimension necessitating the application of the harmless error rule contained in rule 44.2(a) of the Texas Rules of Appellate Procedure. Therefore we apply the standard contained in rule 44.2(b) of the Texas Rules of Appellate Procedure.

▇▇ Under rule 44.2(b) we are to disregard the error unless a substantial right is affected. TEX.R.APP. P. 44.2(b). We can determine that a substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Coggeshall v. State*, 961 S.W.2d 639, 642–44 (Tex.App.—Fort Worth 1998, pet. filed). Since rule 44.2(b) is virtually identical to rule 52(a) of the Federal Rules of Criminal Procedure,[6] we may look to federal caselaw for guidance on the quantification of this rule. To make the determination of "substantial influence," federal courts have concluded that appellate courts must review the entire record and ascertain whether the error "substantially swayed" the jury, or had a "substantial influence" on the jury's verdict in the context of the entire case against the defendant. *United States v. Blake*, 107 F.3d 651, 653 (8th Cir.1997); *United States v. Wilson*, 107 F.3d 774, 785–86 (10th Cir.1997).

▇▇ To determine the question of burden of proof with regard to rule 44.2(b), we compare it with rule 44.2(a). Rule 44.2(a), by implication, requires the beneficiary of the error in the trial court, ordinarily the State, to demonstrate beyond a reasonable doubt on appeal that the error did not

---

2. Appellant argues in his motion for rehearing that rule 44.2(a) was the correct test, but that we applied it incorrectly. Because we find that rule 44.2(b) applies, we deny appellant's motion.

3. *See* TEX.R.APP. P. 44.2(a) which provides:

 If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Id.*

4. *See* TEX.R.APP. P. 44.2(b) which provides:

 Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. *Id.*

5. *See generally*, GOODE, WELLBORN & SHARLOT, TEXAS PRACTICE-COURTROOM HANDBOOK ON TEXAS EVIDENCE 261 (1997).

6. Rule 52(a) states: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." FED.R.CRIM.P. 52(a).

contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a). Rule 44.2(b), however, by its very wording, applies to all *other* errors and does not place a burden on either party. TEX.R.APP. P. 44.2(b). A sister court has recently addressed this issue and found essentially that there is no burden of proof assigned in the rule. *See Fowler v. State*, 958 S.W.2d 853, 866 (Tex.App.—Waco 1997, pet. granted). We believe this finding to be sound and we adopt it. No burden of proof is required, and none is assigned in the federal caselaw. *See O'Neal v. McAninch*, 513 U.S. 432, 436–37, 115 S.Ct. 992, 995, 130 L.Ed.2d 947, 953 (1995).

Applying the test in rule 44.2(b) to the instant case, every witness who saw the attack testified that appellant struck the deceased. The medical examiner opined that no single blow in and of itself caused the victim to die, but each wound constituted a contributing factor which, in the aggregate, caused the cerebral edema that resulted in the victim's death. As pointed out on original submission, the defense presented in this case was essentially that appellant was guilty only of the lesser included offense of abuse of a corpse, not murder. *See Umoja* at 5–6. Appellant did not claim that he did not participate in the attack, and there was ample evidence that there had been prior contact between the appellant and the victim. We do not believe, in the context of the entire case against appellant, that testimony that appellant had struck the victim one month before the instant offense had a substantial or injurious effect or influence on the jury's verdict such that appellant was deprived of a substantial right. We find that the error was harmless, and overrule point one.

Additionally, on original submission, in points six and seven, appellant challenged the entry by the trial court of an affirmative finding that a deadly weapon was used in the commission of the offense, in the judgment of conviction. *See id.* at 10. We agreed with appellant that the trial court erroneously entered the finding, in that he opined that the jury had made such a finding. *See id.* at 10; *see also Fowler*, 958 S.W.2d at 858. Accordingly we abated this cause to the trial court for a hearing to determine whether a *nunc pro tunc* order to correct a clerical error was in order, or whether the error was a product of judicial reasoning and therefore not to be disturbed. *See Umoja* at 10. Pursuant to our order, the trial court conducted a hearing with both parties present. At the conclusion of the hearing, the trial court entered written findings of fact and conclusions of law, ultimately finding that the recitation in the judgment that the jury made a deadly weapon finding was the result of a clerical error and not the product of judicial reasoning. Further, the trial court found that the judgment should be corrected *nunc pro tunc* to reflect that "the court affirmatively finds that the defendant used or exhibited a deadly weapon," and that "[t]he correction of the judgment to reflect the court's deadly weapon finding constitutes a clerical correction which requires no judicial reasoning." The record shows that the trial court ultimately entered a *nunc pro tunc* order correcting the minutes of the court to reflect that the "court affirmatively finds that the defendant used or exhibited a deadly weapon, to-wit: his hand and foot during the commission of the offense or during the immediate flight therefrom." Accordingly, because the trial court, in the instant case, was the fact-finder during the punishment phase of trial, he had the authority to make a deadly weapon finding. *See Flores v. State*, 690 S.W.2d 281, 283 (Tex. Crim.App.1985).[7]

The judgment of the trial court is affirmed.

---

**7.** We note that appellant has filed a purported appeal from the trial court's findings in the abatement hearing. Because this cause was previously abated for just such a hearing, no final judgment was entered by this court from which appellant could appeal. There being nothing for appellant to appeal, we dismiss this attempt at appealing a post-abatement hearing ruling by the trial court for want of jurisdiction. We note that appellant may, if he chooses, file a motion for rehearing pursuant to TEX.R.APP. P. 49.5(a), now that a final judgment is being entered.