Zerick MARVIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–96–01562–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Dissenting Opinion Filed July 29, 1999.

Aug. 19, 1999.

Rehearing Overruled Oct. 21, 1999.

DeEdward J. Greer, Houston, for appellants.

Keli Pool Roper, Houston, for appellees.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

## CORRECTED MAJORITY OPINION

DON WITTIG, Justice.

Appellant, Zerick Marvis, pled not guilty to the offense of murder. *See* TEX. PEN. CODE ANN. § 19.02(b)(1) (Vernon 1994). He was convicted, and finding two enhancement paragraphs to be true, the jury assessed punishment at seventy-five years in the Texas Department of Criminal Justice, Institutional Division. In two multifarious points of error, appellant challenges the legal and factual sufficiency of the evidence to support his conviction as a principal and as a party and asserts fundamental charge error and prosecutorial misconduct. We reverse and acquit in part and reverse and remand in part.

### Background

Appellant heard a knock on the door while at home one night with his wife and

daughter. Appellant answered the door and recognized Germone Dickey and Carlton Brown, complainant. Appellant went back inside his apartment, put on a bullet proof vest, and armed himself. Appellant stated in his "confession" that he did this for his and his family's protection. The principal evidence, other than that an argument took place, indicating what happened occurred outside was appellant's statement introduced by the State. The three essential forms of evidence offered in this straightforward case were limited to: descriptions of the physical evidence primarily by Dr. Brown, the other side of the wall witness stating there was a disagreement, and appellant's statement. Appellant said that Dickey attempted to "start something" between appellant and complainant. An argument transpired. Appellant stated that Dickey shot complainant in the head as complainant started to reach for his pistol. Then, appellant also fired his gun in claimed self defense. Four of appellant's bullets hit complainant, and a shot aimed at Dickey misfired. Complainant received ten gunshot wounds, six from Dickey and four from appellant. Appellant also sustained a shattering gunshot wound in his lower leg, which ordinarily would be viewed as a defensive wound, however the State argued this to be self-inflicted. Appellant's statement and blood trail indicate that a struggle between Dickey and appellant occurred after the gunfire. The medical personnel arrived shortly finding complainant dead, appellant wounded, and no sign of Dickey.

## Analysis

Appellant's points of error are multifarious. The new rules indicate that we are to address subsidiary questions that are fairly included under the statement of an issue or point. See TEX.R.APP. P. 38. The State attempted to charge appellant as a principal and as a party. We construe appellant's points of error to challenge both the legal and factual sufficiency of the evidence to support appellant's conviction as a principal and a party. Within these points, appellant asserts fundamental charge error resulting in appellant being charged only as a principal. Finally, appellant argues the State engaged in prosecutorial misconduct. We will address each issue in turn.

### Principal

The first question that must be decided is whether the evidence was legally and factually sufficient to convict appellant as a principal for murder.[1] When reviewing the legal sufficiency of the evidence, we look at the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State,* 905 S.W.2d 570, 574 (Tex.Crim. App.1995). The trier of fact is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. See *Jones v. State,* 944 S.W.2d 642, 647 (Tex.Crim.App.1996). Likewise, reconciliation of conflicts in the evidence is within the exclusive province of the fact finder. *Id.* This standard of review is the same for both direct and circumstantial evidence cases. See *Chambers v. State,* 711 S.W.2d 240, 245 (Tex.Crim.App.1986).

Murder is a "result of conduct" offense. *Cook v. State,* 884 S.W.2d 485, 490 (Tex.Crim.App.1994). A person commits the offense of murder if he: intentionally or knowingly causes the death of an individual. See TEX. PEN.CODE ANN. § 19.02(b)(1) (Vernon 1994). Thus, the State must prove beyond a reasonable doubt that appellant's intentional and knowing acts caused the death of complainant.

The State's expert witness, Dr. Brown, testified that three of complainant's four gunshot wounds from appellant's .38 caliber gun would be fatal if adequate treatment was not rendered quickly. Appellant's three shots hit complainant in his abdominal region striking various organs. However, the evidence reveals that complainant was also struck in the head with three hollow point bullets from Dickey's larger .40 caliber gun. With respect to the three head wounds, identified as wounds

---

[1]. Because the evidence is legally insufficient to convict appellant as a principal, we need not address his factually sufficiency challenge.

one, two, and three, Dr. Brown testified these would definitely be fatal.

Q: With the wounds of 1, 2, and 3, those wounds, if you had gotten [complainant to a hospital] very quickly, those wounds you would not [survive]?

A: I don't think so, because the No. 1 bullet went back through the tongue and that would have caused swelling and bleeding and he would have aspirated the blood and choked on his own blood. Or No. 2 would have been the one that came through the mouth and was against the-that was flattened in the right cheek area. That one he would have bled from his teeth because it knocked out a bunch of teeth and he would have aspirated on the blood. No. 3 that went through the back of the mouth adjacent to the spine, it struck the neck vertebrae and it also was located beneath the skull. That was a lethal wound.

Q: ... Taking all of that into consideration, all of those being very lethal wounds, giving you a hypothetical, let's say bullets 1, 2 and 3 were fired first. Are you with me?

A: Yes.

Q: How much time would you estimate would it take for someone to die from that type of injury or wound?

A: On the hypothetical, it may be-

Q: Could it happen very quickly?

A: Yes. 15 seconds, 30 seconds. You cut off the blood supply. Again, the bullet[ No. 3] that went adjacent to the spinal cord and struck the vertebrae, I'm sure that would have rendered him very incapacitated very immediately and he would have died shortly.

. . .

Q: So bullets 4, 5 and 6 were all in the abdominal chest type cavity; is that correct?

A: Yes.

Q: And those wounds would have taken much longer in comparison to bullets 1, 2 and 3 to cause death?

A: They would have taken longer, yes.

. . .

Q: But we do know from your testimony that 1, 2 and 3, that person could have died within 15 seconds of those bullets entering that cavity because of the nature of where they reside and what they struck?

A: That would be as good a guess as I could give you.

On redirect the State failed to rebut or contradict any of Dr. Brown's testimony elicited on cross regarding the length of time complainant could have lived after the infliction of the gunshot wounds to his head. Dr. Brown's best guess was that complainant could have lived no longer than approximately fifteen to thirty seconds. On the other hand, Dr. Brown testified complainant possibly could have survived wounds four, five, and six, inflicted from appellant's gun, if immediate medical attention was rendered. Thus, Dr. Brown's testimony demonstrates appellant would not have died from wounds four, five, and six before the deadly effect of Dickey's hollow points. Wounds inflicted by appellant were at least operable, and not immediately effective to cause death.

The State is constitutionally required to prove all the elements of murder beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Geesa v. State,* 820 S.W.2d 154, 156 (Tex.Crim.App.1991). The issue becomes whether or not Dr. Brown's testimony provides some evidence beyond a reasonable doubt that appellant's gunshot wounds to complainant's abdominal region caused complainant's death before the other assailant's gunshot wounds to complainant's head. The evidence demonstrates that complainant was dead when the medical personal arrived. Dr. Brown's testimony indicates that gunshot wounds one, two, and three would individually have caused death in approximately thirty seconds and gunshots four, five, and six would not have caused death that quickly. The State argues that some shots were fired after the

complainant was on the ground. According to Dr. Brown these could have been either appellant's or Dickey's gunshots. Coupled with Dr. Brown's testimony that three of Dickey's gunshots were fatal, the State's evidence failed to establish beyond a reasonable doubt that appellant's gunshots caused complainant's death before the other assailant's gunshots.

This case is distinguishable from a concurrent cause case. *See Umoja v. State*, 965 S.W.2d 3, 8–9 (Tex.App.—Fort Worth 1997, no pet.). In *Umoja*, multiple assailants beat another individual to death. *Id.* at 5. The medical examiner testified that he could not say with any degree of certainty which of the blows caused death stating all blows contributed to his death. *Id.* at 9. Consequently, no proof existed to establish the other assailants' blows were clearly sufficient to have caused death and Umoja's blows were clearly insufficient. *Id.*

Here, Dr. Brown's testimony demonstrates that complainant would have died regardless of appellant's conduct. Thus, the other assailant's gunshots to complainant's head were clearly sufficient to have caused complainant's death within a minute and appellant's gunshots to complainant's mid-section were clearly insufficient to have killed complainant within the relevant time. We find the State's evidence legally insufficient to find appellant guilty as a principal.

### Party

■ We must now determine whether there is sufficient evidence to support appellant's conviction as a party. Before we review the sufficiency of the evidence to support appellant's conviction as a party, we must determine whether the charge allowed such a conviction and how this effects our sufficiency review. Historically, if a charge failed to charge the defendant as a party and the evidence was insufficient to convict as a principal, then the result was an acquittal. *See Plata v. State*, 926 S.W.2d 300, 303–04 (Tex.Crim. App.1996); *Jones v. State* 815 S.W.2d 667, 671 (Tex.Crim.App.1991). Based on recent case law, however, we must now determine what the proper sufficiency standard of review is when confronted with an erroneous charge and what effect, if any, a change in this standard will have.

### Application Paragraph

■ A proper charge of the law of parties includes both an abstract and an application paragraph. Reversible error occurs when the application paragraph contains *no application of the law of parties to the facts* and the evidence showed or raised an issue that the conduct of the defendant was not sufficient to show his guilt as the primary actor and an objection was made. *See Apodaca v. State*, 589 S.W.2d 696 (Tex. Crim.App. 1979); *Oliver v. State*, 160 Tex. Crim. 222, 268 S.W.2d 467 (1954). At the same time, courts have held that a perfect charge is not necessary as long as it *adequately* applies the law of parties to the facts. *See Chatman v. State*, 846 S.W.2d 329, 332 (Tex.Crim.App.1993); *Johnson v. State*, 739 S.W.2d 299, 307 (Tex.Crim.App. 1987). In *Chatman*, the court held that "either acting alone or as a party, as that term has been defined" was a proper charge allowing the jury to find appellant guilty as the primary actor or as a party. 846 S.W.2d at 332; *see Johnson*, 739 S.W.2d at 299 (finding "either acting alone or with another or others as a party as that term has heretofore been defined" to be sufficient). In this case, the State attempted to charge appellant as both a principal and a party. The State included the party charge in the abstract. The application paragraph, however, lacked a party charge and charged appellant as follows:

Now if you find from the evidence beyond a reasonable doubt that, in Harris

County, Texas, Zerick Marvis, the defendant, *either acting alone or together* with Jerome Dickey, on or about the fourth day of April, 1995, did then and there unlawfully, intentionally or knowingly cause the death of Carlton Brown. . . .

(emphasis added). This charge is distinguishable from the charges in *Chatman* and *Johnson* because it never refers to the term "party" or to the charge where party is defined. Acting as a party requires more than just an appearance of acting together as this charge indicates.

■ Section 7.02 of the Texas Penal Code states that a person is criminally responsible for another's conduct if:

> . . . (2) acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.

Stated another way, the "evidence must show that at the time of the offense the parties were acting together, each contributing some part towards the execution of their common purpose." *Burdine v. State,* 719 S.W.2d 309, 315 (Tex.Crim.App.1986). In *Plata v. State,* the court's charge stated "if you find from the evidence beyond a reasonable doubt that . . . Eloy Hinojosa and Louis Alberto Plata did unlawfully appropriate. . . ." 926 S.W.2d 300, 303–04 (Tex.Crim.App.1996). The *Plata* court, relying on the *Jones/Walker* doctrine, found that the charge only allowed a conviction as a principal.[2] *Id.* at 304; *see Walker v. State,* 823 S.W.2d 247 (Tex.Crim.App. 1991); *Jones,* 815 S.W.2d 667, 671 (Tex. Crim.App.1991). The present charge, like the *Plata* charge, does not require any intent or mens rea and fails to refer to the abstract as did the charges in *Chatman* and *Johnson.* Thus, the charge allowed a

conviction based on the mere appearance that appellant and Dickey were acting together. Therefore, the charge as given resulted in charging appellant only as a principal.

This conclusion creates two issues. First, we must decide what is the correct standard to review appellant's sufficiency challenges regarding conviction as a party. If the evidence is sufficient, then we must determine whether the court's erroneous charge requires reversal.

## Applicable Standard

■ Appellant asserts the evidence is insufficient to support his conviction. As we have already demonstrated, the evidence was insufficient to establish appellant's guilt as a principal and the charge only allowed a conviction as a principal, not as a party. Therefore, the question becomes what is the proper standard of review. In *Blanco v. State,* the court addressed this exact issue, relied on the *Jones/Walker* doctrine, and acquitted Blanco. 959 S.W.2d 226, 228 (Tex.App.— El Paso 1996),*vacated and remanded,* 962 S.W.2d 46 (Tex.Crim.App.1998). The Court of Criminal Appeals granted petition for review and remanded *Blanco* to the El Paso Court of Appeals for reconsideration in light of *Malik v. State,* 953 S.W.2d 234 (Tex.Crim.App.1997). *Blanco,* 962 S.W.2d at 47. However, in July 1998, the Court of Criminal Appeals in *State v. Renteria* stated "[o]ne question left open after *Malik* is the continuing validity of the *Jones/Walker* doctrine." 977 S.W.2d 606, 608 (Tex.Crim. App.1998). Thus, the central issue of this point of error is whether the *Jones/Walker* doctrine is still valid or whether *Malik* has overruled it.

The *Jones/Walker* doctrine requires the sufficiency of the evidence to be measured

---

**2.** The dissent focuses on the abstract paragraph of the charge. The dissent, however, does not address or distinguish the language of the application paragraph of the *Plata*

charge. *Plata,* 926 S.W.2d at 303–04. There, the *Plata* court found the charge insufficient to allow a conviction as a party, despite the correctly worded abstract paragraph. *Id.*

against the theory of culpability incorporated and set out in the application paragraph. The *Malik* standard requires the sufficiency of the evidence to be measured against the hypothetically correct jury charge. 953 S.W.2d at 240. In *Malik*, the State inadvertently inserted an additional element which was not an element of the charged offense. *Id.* All the required elements were submitted plus an additional requirement.[3] *Id.* The jury returned an affirmative finding on all the required elements of the offense in addition to the extraneous element. *Id.* The *Malik* hypothetically correct charge, established as the proper standard to review sufficiency of the evidence challenges, was based on the premises that if the State unnecessarily increased its burden of proof in the charge or unnecessarily restricted its theories of liability, the State would not be required to prove or be limited by the charge given.[4] *Id.* Instead, the hypothetically correct charge is used. *Id.*

In *Jones*, the court only charged the defendant as a principal, not as a party. *Jones*, 815 S.W.2d at 670–71; *see Plata*, 926 S.W.2d at 303–04. Therefore, the court reviewed the sufficiency of the evidence against the actual charge. *Plata*, 926 S.W.2d at 303–04; *Jones*, 815 S.W.2d at 670–71. Because the party issue was not submitted, the jury was never presented or required to adjudicate the mental culpability issue required to be guilty as a party. In *Malik*, the jury was presented and affirmatively found a higher standard. 953 S.W.2d at 240. One could reasonably argue that the *Malik* standard, hypothetically inserting the correct charge for the appellate court's review, is not applicable to a *Jones/Walker* and now *Plata* situation because the jury was never required or even presented with the issue. *See Blanco*, 959 S.W.2d at 227. However, The Texas Court of Criminal Appeals stated the hypothetical charge shall be used for sufficiency reviews not only when the charge unnecessarily increases the State's burden

of proof, but also when the charge *unnecessarily restricts the State's theories of liability,* and stare decisis controls. *See Malik*, 953 S.W.2d at 240. If sufficiency is to be measured by the hypothetically correct charge when the State's burden is increased or restricted, it is virtually tautologic that we must also measure sufficiency by the hypothetically correct charge when the State's burden is decreased. To hold otherwise would allow the State to present no evidence on certain elements and still sustain a conviction. Sauce for the goose is sauce for the gander. Similarly, as expressed by the *Malik* court "... acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime. . . ." *Id.* Therefore, we hold the *Malik* standard also applies when the State's burden is decreased. *See Howard v. State*, 966 S.W.2d 821, 824–25 (Tex. App.—Austin 1998, pet. ref'd) (holding *Malik* standard applies in *Jones/ Walker/Plata* situations).

Sufficiency of Evidence as a Party

■ We must now examine whether the evidence is legally sufficient to support appellant's conviction as a party. The applicable standard of review is stated *supra.*

■ To establish liability as a party in addition to the illegal conduct by the primary actor, it must be proven that the accused harbored the specific intent to promote or assist the commission of the offense. *See Pesina v. State*, 949 S.W.2d 374, 382 (Tex.App.—San Antonio 1997, no pet.). The agreement, if any, must occur before or contemporaneous with the criminal event. *See Beier v. State*, 687 S.W.2d 2, 3–4 (Tex.Crim.App.1985). The evidence must show that at the time of the commission of the crime, the parties were acting together, each doing some part of the execution of the common plan. *See Brooks v. State*, 580 S.W.2d 825, 831 (Tex.Crim.App. 1979). The essential elements of the parties' culpability is the common design to do a criminal act. *Id.* Although an agreement to act together to commit an offense may

---

3. The *Malik* charge required the admissibility of a particular piece of evidence as a precondition for conviction. *Malik*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

4. The *Malik* charge unnecessarily increased the State's burden. It did not unnecessarily restrict the State's theories of liability.

be proved by direct evidence, circumstantial evidence of the actions and events alone may be sufficient to show that one is a party to a offense. *See Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Crim.App.1986). The fact finder may make its determination based on the events occurring before, during, and after the commission of the offense and may rely on the actions of the defendant which show an understanding and common design to do the criminal act. *See Beier*, 687 S.W.2d at 4.

The State only points to three pieces of evidence to demonstrate appellant was acting as a party. First, the State points out that appellant was wearing a bullet proof vest. Although a bullet proof vest is evidence that appellant felt threatened, it could also reasonably be construed to establish appellant was intending to be involved in a violent criminal act. Second, the State relies on the testimony of Trinne Scott. She stated she heard the complainant say something about them all being friends. Finally, the State relies on the evidence that complainant was shot four times by appellant and six times by Dickey.[5] Despite the evidence that appellant's gun misfired in an attempt to shoot Dickey and that appellant was also wounded, we recognize that appellant's and Dickey's bullets in complainant could provide some evidence of their intent to act together in causing complainant's death. Therefore, we find there was legally sufficient evidence to allow a jury to find appellant had the specific intent to promote or assist Dickey in causing complainant's death. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Mason v. State*, 905 S.W.2d 570, 574 (Tex. Crim.App.1995).

Appellant also argues the evidence is factually insufficient to support his conviction as a party. When reviewing the factual sufficiency of the evidence, we view all the evidence without the prism of "in the light most favorable to the prosecution" and set aside the verdict only if it is so "contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). Although we are authorized to disagree with the verdict, a factual sufficiency review must be appropriately deferential so as to avoid substituting our judgment for that of the trier of fact. *Id.* at 133.

Appellant cites the same evidence as the State to support his factual insufficiency conclusion. However, when viewing all the evidence and not in the light most favorable to the verdict, this evidence fails to establish the jury's verdict is so "contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 129. Accordingly, the evidence is factually sufficient, and we overrule this issue.

### Charge Error

■ The erroneous charges in *Jones/Walker/Plata* resulted in acquittals. *Plata*, 926 S.W.2d at 303–04; *Walker*, 823 S.W.2d at 248; *Jones*, 815 S.W.2d at 670–71. Because of this result, any point of error asserting charge error, resulting in a remand for a new trial, would have been subsumed. However, applying the *Malik* standard and finding the evidence legally and factually sufficient, we must now address the charge issue. In his multifarious point of error, appellant asserts the charge resulted in fundamental error. As we stated earlier, the charge only instructed on the law of parties in the abstract and failed to apply the law of parties to the facts. This resulted in charge error.[6] *See Campbell v. State*, 910 S.W.2d 475, 477 (Tex.Crim.App.1995); *Garrett v. State*, 749 S.W.2d 784, 802 (Tex.Crim.App.1988) (op. on reh'g), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex.Crim. App.1997).

---

**5.** Appellant attempted to argue he shot in self defense after complainant reached for his gun. This would weaken the State's reliance on this evidence to establish appellant was acting as a party. However, the jury chose not to believe appellant's theory by negatively answering the self defense issue.

**6.** Prior to *Almanza*, the Court of Criminal Appeals held the unobjected to failure of the trial court to include the law of parties in the application paragraph did not constitute fundamental error. *See Romo v. State*, 568 S.W.2d 298, 302–303 (Tex.Crim.App.1978) (op. on reh'g). The *Romo* court's theory was

■■■■ Appellant failed to object; therefore, under *Almanza,* appellant must now demonstrate that the charge error resulted in "egregious harm." *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). Egregious harm is demonstrated by showing that appellant did not receive a fair and impartial trial. *Id.* This determination requires an examination of the record as a whole. "[T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

■■■■ Reviewing the record, the charge only allowed a conviction as a principal. The evidence was legally insufficient to support appellant's conviction as a principal. A charge which fails to apply the law to the facts is insufficient to authorize conviction on that theory. *See Garrett,* 749 S.W.2d at 802–03. Such a charge deprives the defendant of a fair and impartial trial. *See Harris v. State,* 522 S.W.2d 199, 202 (Tex.Crim.App.1975). This type of error "goes to the very basis of the case so that the charge fails to state and apply the law under the which the accused is prosecuted." *Harris,* 522 S.W.2d at 202.

The attempted party charge lowered the State's burden of proof. It relieved the State from proving the *mens rea* element to be convicted as a party. Consequently, the jury could have convicted appellant without adjudicating this element. Most of the evidence corroborated appellant's statement claiming self defense, including the gunshot which shattered his leg (claimed by the State to be self-inflicted). The charge error could have allowed appellant to be convicted even while acting in self-defense so long as his self-defense ac-

tion combined with Dickey's deadly force effectuated the death. We find the charge error resulted in egregious harm. Accordingly, we sustain appellant's point of error. Because we sustain this point of error, we need not address appellant's point of error concerning prosecutorial misconduct.

## Conclusion

We reverse and acquit in part and reverse and remand in part. Because we find the evidence legally and factually insufficient to support a conviction as a principal for the offense of murder, we reverse and acquit of this charge. We find the evidence legally and factually sufficient to support a conviction as a party for the offense of murder. The erroneous party charge resulted in harmful error. Therefore, we reverse and remand this cause to the trial court for a new trial as a party for the offense of murder.

EDELMAN, Justice, dissenting.

The majority opinion holds that the jury charge relieved the State of proving that appellant had the requisite mental state to be a party to the offense and thereby resulted in egregious harm. The charge allowed appellant to be convicted as a party if the jury found that he was acting "together with" the principal actor to commit the offense. By contrast, the law of parties statute states that a defendant may be convicted as a party if "acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *See* TEX. PEN.CODE ANN. § 7.02(a)(2) (Vernon 1994). The central question, then, is whether the meaning of acting "together with" is substantially the same as or different from the language of section 7.02(a)(2).

that a defendant could elect to waive his right to have the law of parties applied to the facts, thus forcing the State into meeting a more onerous burden of proof. *Id.* The *Romo* court then proceeded to review the sufficiency of the evidence to support Romo's conviction as a party. *Id.* However, in *Garrett v. State,* the Court of Criminal Appeals recognized its action in *Romo* rendered the "'election' rationale a mere legal fiction." 749 S.W.2d 784, 802 (Tex.Crim.App.1986) (op. on reh'g). The

*Garrett* court stated: "It is patently unfair and irrational to find the charging error harmless because it raises the burden of proof and then ignore that raised burden when measuring the sufficiency of the evidence." *Id.* Since the *Malik* standard now applies to sufficiency challenges, the *Romo* situation has resurfaced. Based on the *Garrett* court's disapproval of its earlier actions in *Romo,* we will review the charge error under *Almanza* and *Garrett.*

The essential thrust of section 7.02(a)(2) is that, in committing the offense, the parties be acting, not independently of one another, but rather to assist one another in a shared objective or common purpose. Although the phrase "acting together with ... [the principal actor to commit the offense]" is less detailed and precise than the language of section 7.02(a)(2), its plain meaning signifies both a common purpose to commit an offense and some action to assist in committing it.[1] This is illustrated by the first sentence commonly appearing in the abstract portion of charges on the law of parties stating, as in this case, "All persons are parties to an offense who are ... guilty of *acting together* in the commission of the offense" (emphasis added).[2] Indeed, if one was attempting to succinctly state the opposite of "acting independently," the phrase "acting together" is arguably the most obvious choice. Because it is not apparent to me how two defendants could "act together" to commit an offense without also satisfying the party language of section 7.02(a)(2), I do not believe that the meaning of the charge language used in this case differed materially enough from that prescribed in section 7.02(a)(2) to actually lower the State's burden of proof and thereby constitute egregious harm.

The majority opinion also states that the above discrepancy in the parties charge "allowed appellant to be convicted even while acting in self-defense so long as his self-defense action combined with Dickey's deadly force effectuated the death." Appellant has not challenged the validity of his charge on self-defense, and his counsel expressly stated during oral argument that he was not challenging the sufficiency of the evidence to support the jury's failure to find that appellant acted in self-defense. To the extent appellant had proven that his shooting of the complainant constituted self-defense, he would have been entitled to acquittal regardless of whether he had acted as a principal actor or party. Therefore, contrary to the referenced statement in the majority opinion, I see no connection between the parties charge and the issue of self defense.

Accordingly, I would hold that the charge language did not result in egregious harm and thereby affirm the conviction.

---

1. This is in contrast to the application paragraph of *Plata* which asked merely whether the two defendants "did unlawfully appropriate" the money and contained no language signifying a joint purpose or common effort in doing so. *See Plata v. State,* 926 S.W.2d 300, 303 (Tex.Crim.App.1996).

2. *See, e.g., McFarland v. State,* 928 S.W.2d 482, 514 (Tex.Crim.App.1996), *cert. denied,* 519 U.S. 1119 (1997). *Plata v. State,* 926 S.W.2d 300, 303 (Tex.Crim.App.1996); *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim. App.1994), *cert. denied,* 519 U.S. 1030 (1996). *Campbell v. State,* 910 S.W.2d 475, 476 (Tex. Crim.App.1995) *cert. denied,* 517 U.S. 1140 (1996).