COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                       NOS.
 2-06-082-CR

        2-06-083-CR

        2-06-084-CR

        2-06-085-CR

        2-06-086-CR

 

 

LARRY NUELL NEATHERY                                                     APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

 

                                              ------------

                                MEMORANDUM
OPINION[1]

                                              ------------








In five points, appellant
Larry Nuell Neathery appeals his convictions for aggravated sexual assault,
indecency with a child, sexual performance by a child, and attempted aggravated
sexual assault.[2]  We affirm the trial court=s judgments in cause numbers 2‑06‑082‑CR, 2‑06‑083‑CR,
2‑06‑084‑CR.  We affirm
as modified the trial court=s judgments in cause numbers 2-06-085-CR and 2-06-086-CR.

BACKGROUND

There were five complainants,
B.H., C.H., M.L., C.M., and D.M., all of whom were under the age of fourteen at
the time of the alleged offenses. Appellant pled not guilty to all of the
charges.

Regarding B.H., the jury
found Appellant guilty of committing four counts of aggravated sexual assault
and two counts of indecency with a child and assessed punishment at life
imprisonment for one of the aggravated sexual assault counts and ninety-nine
years= confinement for each of the other three counts, as well as twenty
years= confinement for each of the indecency counts. 








Regarding C.H., the jury
found Appellant guilty of committing seven counts of aggravated sexual assault,
two counts of indecency with a child, and one count of sexual performance by a
child and assessed punishment at life imprisonment for the first aggravated
sexual assault count, ninety-nine years= confinement for each of the other six counts of aggravated sexual
assault, and twenty years= confinement
for each of the indecency and sexual performance counts.

Regarding M.L., the jury
found Appellant guilty of two counts of aggravated sexual assault and four
counts of indecency with a child and assessed life imprisonment for the first
count of aggravated sexual assault and ninety-nine years= confinement for the second, twenty years= confinement for each of three of the indecency counts, and ten years= confinement for one of the indecency counts.

Regarding C.M., the jury
found Appellant guilty of one count of indecency with a child and one count of
attempted aggravated sexual assault and assessed ten years= confinement for each count. 
Regarding D.M., the jury found Appellant guilty of committing sexual
performance by a child and assessed punishment at twenty years= confinement.  The trial court
accepted the jury=s verdicts
and sentenced Appellant accordingly.

SUFFICIENCY OF THE EVIDENCE

In his first two points,
Appellant complains that the evidence is legally and factually insufficient to
support the jury=s verdicts
finding him guilty of all counts.

Standard Of Review








In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.  The trier of fact
is the sole judge of the weight and credibility of the evidence.  See Tex.
Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re‑evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact‑finder.  Dewberry v.
State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529
U.S. 1131 (2000).  We must resolve any
inconsistencies in the evidence in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406
(Tex. Crim. App. 2000).








The sufficiency of the
evidence should be measured by the elements of the offense as defined by the
hypothetically correct jury charge for the case.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997); Bowden v. State, 166 S.W.3d 466, 470 (Tex. App.CFort Worth 2005, pet. ref=d).  Such a charge would be one
that accurately sets out the law, is authorized by the indictment, does not
unnecessarily restrict the State=s theories of liability, and adequately describes the particular
offense for which the defendant was tried. 
Gollihar v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik,
953 S.W.2d at 240.  The law as authorized
by the indictment means the statutory elements of the charged offense as
modified by the charging instrument.  See
Curry, 30 S.W.3d at 404.  We must
consider all the evidence admitted at trial, even improperly admitted evidence,
when performing a legal sufficiency review. 
Moff v. State, 131 S.W.3d 485, 489‑90 (Tex. Crim. App.
2004).








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact‑finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact‑finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414‑15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  To reverse under the
second ground, we must determine, with some objective basis in the record, that
the great weight and preponderance of all the evidence, though legally
sufficient, contradicts the verdict.  Watson,
204 S.W.3d at 417.

In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact‑finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact‑finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.








All five boys testified about
their interactions with Appellant, a church pastor.  M.L. was around thirteen when he made his
outcry statement to his mother.  His
father was Appellant=s friend,
and they attended Appellant=s church.  C.M. was around
thirteen at the time of his incident, had lived near Appellant, and had gone to
Appellant=s church; he
came forward after M.L. made allegations against Appellant.  C.H. and B.H. are Appellant=s grandsons and D.M. is Appellant=s step-grandson.  Several months
after M.L.=s outcry,
C.H. revealed that Appellant had been sexually assaulting him and his younger
brother, B.H.  Sexual assault
examinations of M.L., C.H., and B.H. did not reveal any physical signs of
abuse, but both sexual assault nurse examiners testified that this was not
unusual.

Sexual Performance by a Child

A person commits the offense
of sexual performance by a child if, knowing the character and content thereof,
he employs, authorizes, or induces a child younger than age eighteen to engage
in sexual conduct or a sexual performance, where sexual conduct means, inter
alia, masturbation, and sexual performance means any performance or part
thereof that includes sexual conduct by a child younger than eighteen.  See Tex.
Penal Code Ann. ' 43.25(a),
(b).  Appellant was accused of committing
sexual performance by a child in D.M. and C.H.=s cases.








D.M., who was age thirteen at
trial, testified about a Ajack‑off
contest@ that Appellant organized at his house between D.M., C.H., Appellant,
and D.M.=s older brother, who was also a minor.[3]  D.M. testified that the boys had to
masturbate, climax, and show Appellant Athe wet spots@ in order to
get money for being in the contest.  He
testified that he received $5.00.

C.H., who was also age
thirteen at trial, testified about the contest with D.M. and D.M.=s older brother at Appellant=s house, stating that Appellant threatened them first and then offered
to pay them.  C.H. testified that
Appellant said that the winner, that is, the first to ejaculate, would get
$10.00 and second place would get $5.00. 
C.H. testified that D.M.=s older brother got $10.00.  He
testified that he and D.M. each received $5.00 because they had Aboth spermed at the same time.@  C.H. testified that Appellant
masturbated at the same time as the boys.








B.H., who had not been
present for the contest, testified that D.M. told him about it and showed him
the $5.00.  C.M. testified that D.M.=s older brother and C.H. told him about the contest and that he saw
the money.  He also testified that he
told C.H.=s mother,
Regina, but that when she confronted Appellant about it, the boys changed their
story and claimed that Appellant had paid them for cleaning.  Appellant testified that he did not commit
any of the charged behavior.  He
specifically testified that he did not encourage a Ajack-off contest@ and that he
had given the boys the money for doing chores.

Viewing this evidence in the
light most favorable to the verdict, we conclude that the jury could have found
the essential elements of sexual performance by a child with regard to both
D.M. and C.H. beyond a reasonable doubt by choosing to believe their testimony
over Appellant=s and
resolving any conflicts within the evidence to reach their conclusion.  See Jackson, 443 U.S. at 319, 99
S. Ct. at 2789; Hampton, 165 S.W.3d at 693.  Specifically, both D.M. and C.H. were younger
than eighteen and testified that Appellant induced them to engage in
masturbation by offer of payment and paid them $5.00 each afterward.  See Tex.
Penal Code Ann. ' 43.25(a),
(b).  The jury could have inferred
Appellant=s Aknowing the character and content thereof@ of his offer based on the same testimony.  See id. 
We conclude that the evidence was legally sufficient to convict
Appellant of sexual performance by a child with both C.H. and D.M., and we
overrule this portion of Appellant=s first point.








 Viewing the same evidence in a neutral light,
we conclude that it was not so weak that the jury=s determination was clearly wrong and manifestly unjust, or that the
conflicting evidence presented by Appellant so greatly outweighed the evidence
supporting conviction for sexual performance of a child in both D.M.=s and C.H.=s cases that
the jury=s determination was manifestly unjust. 
See Watson, 204 S.W.3d at 414‑15, 417; Johnson, 23
S.W.3d at 11.  The jury heard evidence
not only from D.M., C.H., and Appellant, but also from B.H. and C.M., who
claimed that they saw the money Appellant paid, and, during the State=s rebuttal, D.M.=s older
brother, who testified that he told Appellant that he finished first and that
he received $10.00 from Appellant. 
Therefore, deferring to the jury=s determination of the weight to be given contradictory testimonial
evidence, we conclude that the evidence was factually sufficient to convict
Appellant of sexual performance by a child in the cases involving D.M. and
C.H., and we overrule this portion of his second point.  See Johnson, 23 S.W.3d at 8.

Aggravated Sexual Assault








A person commits aggravated
sexual assault when the child is younger than fourteen and the person
intentionally or knowingly causes: the penetration of the child=s anus or sexual organ by any means; the penetration of the child=s mouth by the sexual organ of the actor; the child=s sexual organ to contact or penetrate the mouth, anus, or sexual
organ of another person, including the actor; the child=s anus to contact the mouth, anus, or sexual organ of another person,
including the actor; or the child=s mouth to contact the anus or sexual organ of another person,
including the actor.  See Tex. Penal Code Ann. ' 22.021(a)(1)(B), (a)(2)(B). 
Appellant was accused of committing aggravated sexual assault of C.H.,
B.H., and M.L.  Because some of the
counts involved Appellant causing C.H. and B.H. to act together, we will
address the charges involving C.H. and B.H. first, and then the charges
pertaining to M.L.








Appellant was accused of
committing aggravated sexual assault of C.H. by intentionally or knowingly
causing: (1) C.H.=s anus to
contact Appellant=s sexual
organ, (2) C.H.=s sexual
organ to contact Appellant=s anus, (3) the penetration of C.H.=s mouth with Appellant=s sexual organ, (4) C.H.=s sexual organ to contact Appellant=s mouth, (5) C.H.=s anus to contact Appellant=s mouth, (6) C.H.=s sexual organ to contact B.H.=s mouth, and (7) C.H.=s mouth to contact B.H.=s sexual organ.  See id. ' 22.021(a)(1)(B)(ii)-(v). 
C.H. testified that Appellant began Atrying to mess with [him]@ when he was five or six.  See
id. ' 22.021(a)(2)(B).  Appellant was
accused of committing aggravated sexual assault of B.H. by intentionally or
knowingly causing: (1) the penetration of B.H.=s mouth with his sexual organ, (2) B.H.=s sexual organ to contact Appellant=s mouth, (3) B.H.=s mouth to contact C.H.=s sexual organ, and (4) B.H.=s sexual organ to contact C.H.=s mouth.  See id. ' 22.021(a)(1)(B)(ii), (iii), (v). 
B.H. testified that he was five years old when he was first assaulted by
Appellant.  See id. ' 22.021(a)(2)(B). 

C.H. testified that Appellant
sexually abused him at Appellant=s house, in the church office, and at Appellant=s friend=s
house.  C.H. testified that when he spent
the night at Appellant=s house, he
woke up to Appellant Asticking his
penis in my butt@ and that
Appellant also did this at the church, as well as telling C.H. Ato stick my penis in his butt.@  See id. ' 22.021(a)(1)(B)(iii), (iv). 
He testified that Appellant would Asuck my penis, he would make me stick my penis up his butt and he
would try raping me up the butt[;] he would make me suck his penis.@  See id. ' 22.021(a)(1)(B)(ii), (iii). 
He also testified that Appellant put his mouth on C.H.=s butt.  See id. ' 22.021(a)(1)(B)(iv). 
Testimony established that C.H. used the word Abutt@ for Aanus.@








C.H. testified that when
Appellant took him and B.H. to a friend=s house, Appellant told C.H. Ato suck [B.H.=s] penis and
he told [B.H.] to suck [C.H.=s].@ C.H.
testified that, ultimately, he had to put his mouth on B.H.=s penis Aonce or
twice@ and that B.H. put his mouth on C.H.=s penis Aabout once
or twice.@ See id. ' 22.021(a)(1)(B)(iii), (v). 
Araceli Desmarais, one of the sexual assault nurse examiners, testified
that during her medical examination of C.H., in addition to the same
information above, C.H. told her that Appellant Awould make [C.H.] and his brother suck on each other=s penises, but that he never did it. 
He said his brother did suck on his penis a couple of times.@








C.H. testified that B.H. was
almost five years old when Appellant started messing with him, and that C.H.
told him to stop and Astarted to
fight him off, trying to save [B.H.], and then [Appellant] would beat me.@[4]  B.H. testified that Appellant Amessed with me@ and that
C.H. was there when Appellant would touch him and Awould get in the way, because he didn=t want me to go through this like he had to, so he would get in the
way[,] and [Appellant] would get his belt[,] and he would hit [C.H.] with the
metal part of his belt.@ B.H.
testified that the sexual abuse happened when they were at Appellant=s house and sometimes when they were at the church, when Appellant
locked all of the doors, took them into his office, and locked the office
door.  He also testified that Appellant
took them to someone else=s house and
that Appellant and another man would take C.H. to the back.  B.H. testified that Appellant Atold us if we ever told on him, he would beat us into vegetables.@

B.H. elaborated that
Appellant sucked B.H.=s Aprivate part@[5] and Awould make
[B.H.] suck on his [penis].@  See id. ' 22.021(a)(1)(B)(ii), (iii). 
B.H. testified that he did not recall Appellant ever making him do
anything to C.H. or C.H. do anything to him, but admitted that he had tried to
forget some of the abuse.  Desmarais
testified that during her medical examination of B.H., he denied any sexual
contact with C.H.  but repeated the above
statements and told her that Appellant Atried to make me and [C.H.] do all of that stuff I just told you he
did to us.@

Appellant was accused of
committing aggravated sexual assault of M.L. by intentionally or knowingly
causing M.L.=s sexual
organ to penetrate Appellant=s mouth and causing the penetration of M.L.=s anus by inserting Appellant=s finger.  See id. ' 22.021(a)(1)(B)(I), (iii). 
M.L. was thirteen years old when he made an outcry to his mother.  See id. ' 22.021(a)(2)(B).








M.L. told his mother that Ait@ had
happened three or four times, at church and at Appellant=s home.  M.L. testified that
Appellant took him to the church office, told him not to tell anyone, performed
oral sex on M.L., and told him, AThis is our little secret.@  This happened three more
times, and the third time, Appellant asked M.L. if he wanted to touch Appellant=s penis.  M.L. testified that
when he said no, Appellant said, AThat=s fine.@

The last encounter occurred
at Appellant=s house when
M.L. spent the night with C.H. during spring break.  M.L. testified that he was about to go to
sleep when Appellant came in, reached under the bedcovers, and started touching
M.L.=s penis and pulled off M.L.=s boxer shorts.  M.L. testified
that Appellant pulled down his pajama pants and lightly put his penis between
M.L.=s butt cheeks.  M.L. testified
that he shoved Appellant away and Appellant pulled up his pajama pants and left
the room.  M.L. also testified that
Appellant touched M.L.=s anus with
his finger, before he tried to put his penis in M.L.=s anus, but that he did not remember that very well because he had
tried to forget.  Virginia Caldwell, the
other sexual assault nurse examiner, testified that during her medical
examination of M.L., M.L. told her that Appellant Aput his finger on the inside of where he poops from.@








M.L. testified that Appellant
told him the next morning that Appellant did it to C.H. sometimes and that C.H.
shook his head up and down, which M.L. took to mean Ayes.@  Fort Worth police detective Dennis Hutchins
testified that in the course of investigating M.L.=s complaint against Appellant, he also met with C.H., and that, at
that time, C.H. told him that he was not a victim and did not know why M.L.
would have said that.  Detective Hutchins
testified that, several months later, he received an offense report stating
that C.H. had made an outcry of sexual abuse by Appellant.

Appellant testified that he
did not do anything to any of the boys and that they were lying.  He testified that C.H. was lying in
retaliation for Appellant disciplining him. 
He testified that, before his outcry, C.H. did not want to help his
mother in the kitchen and dropped silverware on the floor and when Appellant
told him to behave, C.H. said, AWell, I know how to get you in trouble.@  Appellant testified that he
replied, AGo for it,
little boy.  I=m not afraid of you or anything that you can do,@ and that, after this, C.H. made his outcry. C.H.=s mother gave contradictory testimony, stating that Appellant left the
room before C.H. said to her, AIf only people knew what Papa done to me, he=d be in so much trouble,@ and that when he said that, she took him into another room and he
made his outcry.








C.H. testified that he told
Appellant that Appellant needed to leave him alone because he could go to jail
if C.H. said anything but denied making the statement to his mother about
getting Appellant in trouble.  He
testified that he dropped the silverware because Appellant had come up behind
him and grabbed his butt.  C.H. testified
that he did not say anything when M.L. made an outcry because he was afraid and
that no one at Appellant=s church
believed M.L., C.H.=s parents
paid Appellant=s bail, and
C.H. thought that Appellant would stop after he had been arrested on the
charges involving M.L.  C.H. testified
that he finally told his mother after his parents decided to add a bedroom for
Appellant to their new home because Appellant would have Aprobably messed with me every day for the rest of my life@ and because Appellant tried to Amess with [C.H.]@ even after
M.L. outcried.

Appellant testified that M.L.
was lying because Appellant did not protect M.L. from M.L.=s father, who was also accused of molesting children.  He testified that B.H. was lying because he
was being intimidated by C.H.  He also
testified that he had not always been a pastor, that he had worked in sales
from 1978 to 1991, and that he was a good salesman.








Reviewing the entire record
in the light most favorable to the verdict, we conclude that the jury could
have found the essential elements of all of the aggravated sexual assault
counts brought against Appellant by C.H., B.H., and M.L. after resolving
conflicts in the testimony.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at
693.  All of the boys were younger than
fourteen and the jury could have inferred, based on the evidence presented,
that Appellant=s acts were
intentional or knowing.  See Margraves,
34 S.W.3d at 919 (stating that in a sufficiency review, the jury=s inference of intent is afforded more deference than the evidence
supporting proof of conduct).  Each
element was satisfied by the children=s testimony, with the exception of the count pertaining to Appellant=s digital penetration of M.L.=s anus.  But Caldwell=s testimony that during her medical examination of M.L., he had told
her that Appellant had penetrated his anus with Appellant=s finger, and M.L.=s testimony that he recalled Appellant touching his anus with
Appellant=s finger but
that he had tried to forget were sufficient to support the jury=s findings that Appellant penetrated M.L.=s anus with his finger. 
Therefore, the evidence was legally sufficient to convict Appellant of
committing all of the aggravated sexual assault counts charged in the cases
regarding C.H., B.H., and M.L., and we overrule this portion of Appellant=s first point.

Reviewing all of the evidence
in a neutral light and giving due deference to the jury=s determinations of the weight to be given contradictory testimonial
evidence, we come to the same conclusion with regard to Appellant=s factual sufficiency challenge. 
See Watson, 204 S.W.3d at 414; Johnson, 23 S.W.3d at
8-9.  The evidence supporting the
conviction was not so weak that the jury=s determination was clearly wrong and manifestly unjust, and the
conflicting evidence did not so greatly outweigh the evidence supporting the
conviction that the jury=s
determination was manifestly unjust.  See
Watson, 204 S.W.3d at 414‑15, 417. 
Accordingly, we overrule this portion of Appellant=s second point.








Indecency With A Child

A person commits the offense
of indecency with a child if, with a child younger than seventeen years and not
the person=s spouse, he
engages in sexual contact with the child or causes the child to engage in
sexual contact, or, with the intent to arouse or gratify the sexual desire of
any person, he exposes his anus or any part of his genitals, knowing the child
is present, or causes the child to expose the child=s anus or any part of the child=s genitals.  See Tex. Penal Code Ann. ' 21.11(a).  ASexual contact@ means the
following acts, if committed with the intent to arouse or gratify the sexual
desire of any person: (1) any touching by a person, including touching through
clothing, of the anus, breast, or any part of the genitals of a child; or (2)
any touching of any part of the body of a child, including touching through
clothing, with the anus, breast, or any part of the genitals of a person.  Id. ' 21.11(c).  The specific
intent to arouse or gratify the sexual desire element can be inferred from the
defendant=s conduct,
his remarks, and all surrounding circumstances. 
See McKenzie v. State, 617 S.W.2d 211, 216 (Tex. Crim. App.
1981); Couchman v. State, 3 S.W.3d 155, 163 (Tex. App.CFort Worth 1999, pet. ref=d). 








Appellant was accused of
committing indecency by committing the following acts with the intent to arouse
or gratify his sexual desire: touching B.H.=s genitals and causing B.H. to touch Appellant=s genitals, touching C.H.=s genitals and causing C.H. to touch Appellant=s genitals, and touching M.L.=s genitals and exposing Appellant=s penis to M.L., knowing M.L. was present.[6]
        B.H. testified that Appellant
touched and rubbed B.H.=s private
parts under his underwear with his hands and that he sometimes saw Appellant do
the same thing to C.H.  He also testified
that Appellant made him rub Appellant=s private part with his hand. 
C.H. testified that the sexual abuse started when he was five or six,
that Appellant would Areach over
and grab [him]@ and touch
C.H.=s private parts over his clothes and then progressed to skin-to-skin
contact by pulling C.H.=s pants down
to his ankles and Ajacking
[him] off.@  When asked if he had to touch Appellant=s penis with his hand, C.H. replied, AA lot,@ and AYes, I did have to.@








M.L. testified that Appellant
touched M.L.=s genitals
over M.L.=s clothing
first, before telling him to pull down his pants and underwear and then
masturbating M.L. and performing oral sex on him.  M.L. testified that after he ejaculated,
Appellant handed him a tissue and then started touching himself until he
ejaculated, and then they left.  The next
two times happened essentially the same way. 
M.L. testified that the fourth time, when he spent the night at
Appellant=s house,
Appellant touched M.L.=s penis and
touched M.L.=s butt with
Appellant=s penis.

Appellant denied everything,
as discussed above.  He testified that he
married his wife, Mary, in 1968, divorced her in 1987, remarried her in 1988,
and is still married to her.  He testified
that he is not gay, and, in response to the State=s questioning, claimed that he had never had homosexual experiences
with anyone, including Danny Spiars.  The
State brought Spiars, now age fifty, as a rebuttal witness and he testified
that when he was around sixteen years old, he met Appellant in a park and they
had sexual contact in Appellant=s car. Spiars testified that he is a homosexual.








Reviewing the entire record
in the light most favorable to the verdict, we conclude that the jury could
have found the essential elements of the indecency by contact counts brought
against Appellant by C.H. and B.H., and two of the  indecency by contact and the indecency by
exposure counts brought by M.L.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Hampton, 165 S.W.3d at
693.  Accordingly, we overrule this
portion of his first point.  Viewing the
same evidence in a neutral light, we also conclude that it was not so weak that
the jury=s determination was clearly wrong and manifestly unjust, or that the
conflicting evidence presented by Appellant so greatly outweighed the evidence
supporting the indecency convictions that the jury=s determination was manifestly unjust. 
See Watson, 204 S.W.3d at 414‑15, 417; Johnson, 23
S.W.3d at 11.  Therefore, we also
overrule this portion of Appellant=s second point. 

Attempted Aggravated Sexual Assault

A person commits an offense
if, with the specific intent to commit an offense, he does an act amounting to
more than mere preparation, that tends but fails to effect the commission of
the intended offense.  Tex. Penal Code Ann. ' 15.01(a).  If he attempts an
offense that may be aggravated, his conduct constitutes an attempt to commit
the aggravated offense if an element
that aggravates the offense accompanies the attempt.  Id. ' 15.01(b); see also id. ' 22.021(a)(1)(B)(ii), (a)(1)(B)(v), (a)(2)(B).








Appellant was accused of
attempting to commit aggravated sexual assault against C.M.  C.M. testified that when he was around
thirteen, Appellant took him to church, called him into his office afterwards,
and asked if he had ever been Ajacked off.@  He testified that Appellant then asked him if
he Awould like to suck [Appellant=s] dick,@ and pulled
out his erect penis.  C.M. testified that
he had to wrestle Appellant to get away and then he fled from the church.  Appellant denied this, testifying that C.M.
wanted attention and Alikes to be
what I would call a drama king,@ and that C.M. was a habitual liar.

When reviewed with the rest
of the record in the light most favorable to the verdict and in a neutral
light, C.M.=s testimony
could have led the jury to find that Appellant attempted to commit aggravated
sexual assault of C.M. by attempting to cause the penetration or contact of
C.M.=s mouth with his sexual organ when C.M. was younger than fourteen,
rendering the evidence both legally and factually sufficient to support the
conviction.  See Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Watson, 204 S.W.3d at 414‑15, 417.
Therefore, we overrule this portion of Appellant=s first and second points.

PRESERVATION OF ERROR

In his third point, Appellant
complains that he was convicted Aupon more than one count as between both of the indictments tried in
both of the causes,@ and this
violated the Texas constitutional and statutory scheme as well as the federal
constitutional prohibition against double jeopardy.  Appellant does not specify which counts he
complains of.








In his fourth point, he
contends that the trial court reversibly erred and abused its discretion by
refusing to give a limiting instruction to the jury as to the jury=s consideration of extraneous offense evidence as it was introduced
and Alimiting the jury=s consideration of the evidence to separate consideration of each alleged
offense as set forth in each count of each indictment.@

Standard Of Review

To preserve a complaint for
our review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or
motion.  Tex. R. App. P. 33.1(a)(1); Mosley v. State, 983
S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court=s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez
v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Double Jeopardy








The Double Jeopardy Clause of
the United States Constitution provides that no person shall be subjected to twice
having life or limb in jeopardy for the same offense.  U.S. Const.
amend. V.  As it pertains to Appellant=s complaint, this clause protects against multiple punishments for the
same offense.  Brown v. Ohio, 432
U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); Ex parte Herron, 790 S.W.2d
623, 624 (Tex. Crim. App. 1990) (op. on reh=g).  Generally, constitutional
errors are forfeited by the failure to object at trial.  Curry v. State, 910 S.W.2d 490, 496
& n.2 (Tex. Crim. App. 1995); accord Mendez, 138 S.W.3d at 342.

Appellant asserts that A[t]he only consistent matter herein is that there was one incident@ and that the State took one assault and made it into three offenses
through Astop action@
prosecution, in violation of Patterson v. State, 152 S.W.3d 88 (Tex.
Crim. App. 2004) (addressing statutory construction and not double
jeopardy).  He also asserts that
conviction here could only be upon a single count per complainant, Aregardless of which indictment is considered.@ Because his indictment for sexual performance by a child with D.M.
involved only a single count, we infer that Appellant does not include this
conviction in point three.

Generally, to preserve a
double jeopardy claim, a defendant must object at or before the time the charge
is submitted to the jury.  Gonzalez v.
State, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).  At trial, Appellant presented no objections
to the jury charge.  An appellant is
excused from the preservation requirement when (1) the undisputed facts show
the double jeopardy violation is clearly apparent on the face of the record and
(2) enforcement of usual rules of procedural default serves no legitimate state
interests.  Id. at 643; see
also Cabral v. State, 170 S.W.3d 761, 764‑65 (Tex. App.CFort Worth 2005, pet. ref=d) (applying Gonzalez test). 













The record reflects that,
with regard to B.H., Appellant was indicted for seven separate offenses.[7]  Count one charged that on or about July 13,
2003, Appellant caused the penetration of B.H.=s mouth with his sexual organ and count two charged that, on or about
the same date, Appellant caused B.H.=s sexual organ to contact Appellant=s mouth.  Count three charged
that on or about January 13, 2003, Appellant caused B.H.=s mouth to contact C.H.=s sexual organ.  Count four
charged that on or about July 13, 2003, Appellant caused B.H.=s sexual organ to contact C.H.=s mouth.  Count six charged that
on or about July 13, 2003, Appellant touched B.H.=s genitals, and count seven charged that on or about that same date,
Appellant caused B.H. to touch Appellant=s genitals.  B.H. was eight at
trial and testified that Appellant began abusing him when he was five years
old, starting with touching him under his underwear at church and at Appellant=s house, and that this happened more than ten times.  With regard to Appellant making B.H. touch
his genitals, B.H. testified that Appellant would make B.H. rub Appellant=s penis and that it happened at the house.  B.H. testified that this, and the behavior in
the aggravated sexual assault counts discussed in our review of legal and
factual sufficiency above, occurred Aa whole lot of times@ at the church and also occurred at the house.








It is well settled that the Aon or about@ language of
an indictment allows the State to prove a date other than the one alleged in
the indictment as long as the date is prior to the presentation of the
indictment and not so remote that prosecution is barred by the statute of
limitations.  Sledge v. State, 953
S.W.2d 253, 256 (Tex. Crim. App. 1997). 
Here, B.H.=s testimony
described acts supporting each charge occurring prior to the presentation of
the indictment[8]
and within the applicable statute of limitations period.[9]  Thus, we find no double jeopardy violation
apparent on the face of the record. 
Appellant has therefore failed to meet the first prong of the exception
to the preservation requirement set forth by Gonzalez.  See 8 S.W.3d at 643.  Accordingly, we hold that Appellant failed to
preserve this double jeopardy claim for our review.  See id. at 642‑46 (holding that
a defendant could not raise a claim of multiple punishments for the first time
on appeal and that failure to bring the issue to the attention of the trial
court forfeited the claim;  no express
waiver of double jeopardy rights was necessary). We overrule this portion of
Appellant=s third
point.








Applying the same analysis to
the counts pertaining to C.H. and M.L., we reach the same conclusion, with the
exception of the indecency count involving Appellant=s contact with M.L.=s anus.  See id.  Appellant was indicted for ten separate
offenses with regard to C.H.  Count one
charged that on or about January 11, 1998, Appellant caused C.H.=s anus to contact Appellant=s penis and count two charged that Appellant caused C.H.=s sexual organ to contact Appellant=s anus on or about the same date. 
Count three charged that on or about January 11, 1998, Appellant caused
the penetration of C.H.=s mouth with
Appellant=s sexual
organ and count four charged that Appellant caused C.H.=s sexual organ to contact Appellant=s mouth on or about the same date. Count
five charged that on or about January 11, 1998, Appellant caused C.H.=s anus to contact Appellant=s mouth.  Count six charged that
on or about January 11, 1998, Appellant caused C.H.=s sexual organ to contact B.H.=s mouth and count seven charged that Appellant caused C.H.=s mouth to contact B.H.=s sexual organ on or about that same date.[10]  Counts eight and nine involved indecency with
a child by sexual contact, with C.H. touching Appellant=s genitals and Appellant touching C.H.=s genitals, both alleged on or about January 11, 1998, and count ten
involved the sexual performance by a child alleged to have occurred on or about
January 11, 1998.  During his testimony,
as discussed above with regard to legal and factual sufficiency, C.H. described
acts supporting each of these charges as occurring prior to the presentation of
the indictment[11]
and within the applicable statute of limitations period.  We overrule this portion of Appellant=s third point.








With regard to M.L., count
one charged that on or about March 15, 2004, Appellant caused M.L.=s sexual organ to penetrate Appellant=s mouth and count three charged that on or about the same date,
Appellant caused the penetration of M.L.=s anus with Appellant=s finger.[12]  M.L. provided testimony that supported both
of these convictions, testifying that on three separate occasions, Appellant
put M.L.=s penis in Appellant=s mouth and sucked on it, and, that when M.L. spent the night at
Appellant=s house
during spring break, Appellant digitally penetrated M.L.=s anus.  Caldwell=s testimony also supported the conviction for digital penetration.








However, count four, the
first indecency count, charged that on or about March 15, 2004, Appellant
engaged in sexual contact by touching M.L.=s anus. The testimony pertaining to Appellant touching M.L.=s anus is also the same testimony that supports his conviction for
aggravated sexual assault by digital penetrationCa single incident.  Therefore,
the indecency conviction should properly have been subsumed in the aggravated
sexual assault conviction.[13]  See Ochoa v. State, 982 S.W.2d 904,
908 (Tex. Crim. App. 1998).  This error
is apparent on the face of the record and the trial court knew or should have
known of the problem.  Cf. Gonzalez,
8 S.W.3d at 640-41, 645 (concluding that there was no error on the face of the
record because only one of three possible means of committing the offense,
robbery, implicated double jeopardy considerations).  The proper remedy here is to modify the
judgment by vacating the lesser conviction and sentence.  See Ochoa, 982 S.W.2d at 908; see
also Ex parte Cavazos, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006).  Accordingly, we will modify the judgment in
cause number 02-06-086-CR by vacating the conviction of indecency with a child
by touching M.L.=s anus and
the sentence of twenty years= confinement, but affirm the conviction for aggravated sexual assault
for the same incident.








Count five charged that on or
about March 15, 2004, Appellant touched M.L.=s genitals and count six charged that on or about that same date,
Appellant exposed his penis to M.L. 
Count seven charged that on or about November 30, 2004, Appellant
touched M.L.=s genitals.  Because M.L.=s testimony that there were four separate incidents, three of which
involved Appellant touching M.L.=s genitals and exposing his penis to M.L., supported these other
indecency counts as occurring prior to the presentation of the indictment[14]
and within the applicable statute of limitations period, we conclude that
Appellant failed to preserve error with regard to these remaining counts.  See Cabral, 170 S.W.3d at 764‑65. 








With regard to C.M., count
one charged Appellant with indecency by exposing his penis to C.M. on or about
January 31, 2002, and count two charged that, on or about the same date,
Appellant attempted to commit sexual assault by asking C.M. if he had ever
sucked anyone=s penis and
exposing his penis to him with the specific intent to commit the offense of
sexual assault of a child.  The testimony
pertaining to the indecency by exposure count is also the same testimony that
supports Appellant=s conviction
for attempted aggravated sexual assaultCa single incident and action by Appellant.[15]  Therefore, the indecency conviction should
properly have been subsumed in the attempted aggravated sexual assault
conviction.  See Ochoa, 982 S.W.2d
at 908.  This error is apparent on the
face of the record and the trial court knew or should have known of the
problem.  Cf. Gonzalez, 8 S.W.3d
at 640‑41, 645.  The proper remedy
here is to modify the judgment by vacating the lesser conviction and
sentence.  See Ochoa, 982 S.W.2d
at 908.  Accordingly, we will modify the
judgment in cause number 02-06-085-CR by vacating the conviction for indecency
with a child by exposure and the sentence of ten years= confinement, but affirm the conviction for attempted aggravated
sexual assault for the same incident.

Limiting Instruction

With regard to his fourth
point, Appellant complains that the trial court should have given a limiting
instruction with regard to extraneous offense evidence at three specific
instancesCimmediately
after opening statements, after M.L.=s mother=s direct
testimony, and during Detective Hutchins=s direct testimony.

Preservation of Error








An objection must be made as
soon as the basis for the objection becomes apparent.  Tex.
R. Evid. 103(a)(1); Lagrone v. State, 942 S.W.2d 602, 618 (Tex.
Crim. App.), cert. denied, 522 U.S. 917 (1997); Polk v. State,
729 S.W.2d 749, 753 (Tex. Crim. App. 1987). 
An early objection is just as fatal as a late one.  See Johnson v. State, 977 S.W.2d 725,
728 (Tex. App.CFort Worth
1998, pet. ref=d) (op. on
reh=g) (citing Hon. Charles F. Campbell & William P. Green, Guidelines
for Preserving Error or How Not to Drop the Ball, 54 Tex. B.J. 1178, 1180 (1991)).  To preserve error, a party must continue to
object each time the objectionable evidence is offered.  Fuentes v. State, 991 S.W.2d 267, 273
(Tex. Crim. App.), cert. denied, 528 U.S. 1026 (1999); Ethington v.
State, 819 S.W.2d 854, 858‑59 (Tex. Crim. App. 1991).  An objection preserves only the specific
ground cited.  Tex. R. App. P. 33.1(a)(1)(A); Mosley, 983 S.W.2d at
265; Bell v. State, 938 S.W.2d 35, 54 (Tex. Crim. App. 1996), cert.
denied, 522 U.S. 827 (1997); see also Fierro v. State, 706 S.W.2d
310, 317‑18 (Tex. Crim. App. 1986) (holding that general objection is
insufficient to apprise trial court of complaint urged and thus preserves
nothing for review), cert. denied, 521 U.S. 1122 (1997).

In his first request for a
limiting instruction, Appellant made clear that he was not arguing about
admissibility.  The State had submitted a
list of forty-nine extraneous offenses months before trial, which Appellant
acknowledged receiving during the pretrial hearing.  This list included the offenses charged
against him with regard to C.M., M.L., C.H., B.H., and D.M.  Immediately after opening statements,
Appellant discussed with the State and the trial court about when and how to
give a limiting instruction.  He sought a
limiting instruction Aas
contemplated in Headnote No. 7,@ of Ex parte Varelas.  See
Ex parte Varelas, 45 S.W.3d 627, 631 (Tex. Crim. App. 2001) (stating that
once an extraneous act has been ruled admissible, jurors must be instructed
about the limits on their use of that extraneous act if the defendant so
requests).  Appellant added, 








The logic behind that
limiting instruction is so the jury won=t feel, for example, feel wishy-washy about cases one, two, and three,
and sure [sic] that up with information from cases four and five.  And it may be a little confusing as to how
that comes out, because theCwhen the objection is made, how it applies to the other two, three or
four cases and how that limiting instruction is given. 

The trial court replied, AYou=re the one
making suggestions.  I=m listening.@ Appellant
attempted to clarify, 

Well, obviously, even before
the first witness testifies, that information is going to be extraneous to at
least some of the other indictments. 
Accordingly, we could request a limitingCwe would request a limiting instruction from the beginning and I guessCI guess what ICthe question
then becomes how often and when does the Court continue to give that limiting
instruction?

The trial court attempted to clarify, stating
that it thought Appellant was asking for a limiting instruction with regard to
the five cases and that A[w]hen
number one testifies, [Appellant=s] talking about a limiting instruction about causes two through
five.  That=s what he=s talking
about.  I think the easiest way would be
to give an instruction in the charge as to extraneous offenses.@[16]  The record reflects that it
did so.  After the trial court took a
brief recess, Appellant and the trial court had the following conversation.

Trial Court:         [F]irst of all, you haven=t
told me what you wanted.








Appellant=s
attorney:     Well, what we would request,
Your Honor, specifically before the evidence is put out, because evidence of
case one would be extraneous to cases two, three, four and fiveC 

 

Trial Court:         How do we know that yet?  Some of these witnesses intertwine, and they=re
mentioned once.  I don=t
know who the first witness is.  I don=t
think we need to make a ruling on it until I=ve heard the evidence.  

 

Appellant=s
attorney:     I understand, Your
Honor.  I=m
just saying what the defense would request would be a limiting instruction up
front and a limiting instruction in the charge.

 

The trial court denied his request at that time.

We cannot say that the trial
court erred here by denying Appellant=s first request for a limiting instruction.  Rule 105(a) states

When
evidence which is admissible as to one party or for one purpose but not
admissible as to another party or for another purpose is admitted, the
court, upon request, shall restrict the evidence to its proper scope and
instruct the jury accordingly.

 








Tex. R. Evid. 105(a) (emphasis added).  The
court of criminal appeals has consistently interpreted rule 105 to require a
request for a limiting instruction when the evidence is admitted.  See Hammock v. State, 46 S.W.3d 889,
893-94 (Tex. Crim. App. 2001); see also Scott v. State, 222 S.W.3d 820,
829 (Tex. App.CHouston
[14th Dist.] 2007, no pet.) (stating that limiting instructions should be given
to the jury twice: once when the evidence is admitted and again in the jury
charge).  At this stage of the trial, no
evidence had yet been admitted.  Therefore, Appellant=s first request was untimely and the trial court did not err by
denying it.  See Varelas, 45
S.W.3d at 631 n.3 (noting that the defendant has the burden of requesting a
limiting instruction at the time the evidence is admitted as well as requesting
a limiting instruction in the charge).[17]
We overrule this portion of Appellant=s fourth point.

M.L.=s mother testified that after the police left, M.L. told her that C.H.
had been in the room when it happened. 
Appellant made no objection at that time.  Instead, Appellant waited to request a
limiting instruction until after M.L.=s mother had finished testifying on direct.  The trial court overruled his objection.  Therefore, because Appellant=s objection was untimely, we overrule this portion of Appellant=s fourth point.  See Johnson,
977 S.W.2d at 728.








Appellant requested a
limiting instruction during Detective Hutchins= testimony about M.L., stating, after the State asked the detective
who the additional victim that had been reported was, AAt this point, Your Honor, we would request a limiting instruction
with regard to allegations outside of [M.L.]. 
At this point, that would be extraneous, and we would request a limiting
instruction.@  The trial court overruled this objection and
the detective testified that the additional victim was C.H., that he
interviewed C.H., and that at that time, C.H. told him that he did not know
anything about M.L.=s
allegations.  The detective testified
that several months later, he received an offense report listing C.H. as the
victim and Appellant as the perpetrator. 
During his cross-examination of Detective Hutchins, Appellant asked him
whether he was involved not only in the M.L. investigation, but also with C.H.,
D.M., B.H., and C.M.  Detective Hutchins
testified that he was involved with all of the investigations but the one
involving C.M.








Even if the jury should have
been given a limiting instruction with regard to Detective Hutchins=s testimony about C.H., we conclude that there was no harm.  See Tex.
R. App. P. 44.2(b); see, e.g., Umoja v. State, 965 S.W.2d 3, 12
(Tex. App.CFort Worth
1998, no pet.) (op. on reh=g) (holding that improperly admitted evidence of previous bad act against
complainant was nonconstitutional error). 
For nonconstitutional error, we apply rule 44.2(b) and disregard the
error if it did not affect Appellant=s substantial rights.  Tex. R. App. P. 44.2(b); see Mosley,
983 S.W.2d at 259; Coggeshall v. State, 961 S.W.2d 639, 642‑43
(Tex. App.CFort Worth
1998, pet. ref=d).  A substantial right is affected when the
error had a substantial and injurious effect or influence in determining the
jury=s verdict.  King v. State,
953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United
States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall,
961 S.W.2d at 643.  In making this
determination, we review the record as a whole. 
See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App.
1998).  

The primary issue before the
jury was one of witness credibility.  We
conclude that, within the context of the entire case, including the legal and
factually sufficiency of the evidence and Appellant=s failure to request a limiting instruction during any other testimony
covering the same extraneous offense evidence, the failure to give a limiting
instruction here did not have a substantial or injurious effect on the jury=s verdict and did not affect Appellant=s substantial rights.  See
King, 953 S.W.2d at 271.  We overrule
this portion of Appellant=s fourth
point.  See Tex. R. App. P. 44.2(b).








Finally, Appellant asserts
that the trial court failed Ato give a limiting instruction that the jury could not consider
evidence in one count to supply evidence in another, i.e., consider evidence as
to counts separately.@  However, other than his vague reference
during his first request to Athe logic behind that limiting instruction,@ he did not make such a request of the trial court at that time, nor
during his other two requests for limiting instructions, and did not object to
the limiting instruction included by the trial court in the jury charge.
Because his complaint on appeal does not comport with that made at trial, he
has failed to preserve it for our review. 
Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004)
(holding that the complaint made on appeal must comport with the complaint made
in the trial court or the error is forfeited).

ELECTION

In his final point, Appellant
complains that the trial court Areversibly erred and abused its discretion in refusing to require the
State to elect between allegations forming the basis of each count of
conviction.@  Once the State rests its case in chief, on
the timely request of a defendant, the trial court must order the State to make
its election.  Phillips v. State,
193 S.W.3d 904, 912 (Tex. Crim. App. 2006). 
Absent a motion by the defendant, however, the State is not required to
make such an election.  O=Neal v. State, 746 S.W.2d 769, 771
n.3 (Tex. Crim. App. 1988).  Appellant
did not make any request for an election, and we find no authority suggesting
that the trial court should have ordered one sua sponte.  See Phillips, 193 S.W.3d at 909, 911; O=Neal, 746 S.W.2d at 771 n.3.  Therefore, Appellant failed to preserve this
complaint; we overrule his fifth point.

 

 








CONCLUSION

We modify the trial court=s judgment in cause number 2-06-086-CR;[18]
vacate Appellant=s conviction
for indecency with a child by touching M.L.=s anus and the sentence of twenty years= confinement; and affirm the remainder of the trial court=s judgment.  We modify the trial
court=s judgment in cause number 2-06-085-CR;[19]
vacate Appellant=s conviction
for indecency with a child by exposure to C.M. and the sentence of ten years= confinement; and affirm the remainder of the trial court=s judgment in that case.  Having
overruled all of Appellant=s remaining points, we affirm the trial court=s judgments in causes 2-06-082-CR,[20]
2-06-083-CR,[21]
and 2-06-084-CR.[22]

 

DIXON W. HOLMAN

JUSTICE

 

PANEL
A:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 16, 2007











[1]See Tex.
R. App. P. 47.4.





[2]See Tex. Penal
Code Ann. ' 15.01 (Vernon 2003) (criminal
attempt); id. ' 21.11 (indecency with a
child); id. ' 22.021 (Vernon Supp. 2006)
(aggravated sexual assault); id. ' 43.25 (sexual performance by a child).





[3]D.M.=s older brother testified during
the State=s rebuttal about the contest.  He testified that the contest was Appellant=s idea and that he, D.M., and C.H.
participated.  He testified that he was
completely covered, did not actually masturbate, and lied to Appellant about
it.  He testified that he received $10.00
for saying he was finished first and that both D.M. and C.H. received
$5.00.  He testified that he told C.M.
about it afterwards.





[4]C.H. also testified that when he
was seven or eight, Appellant took him to a friend=s house and told him to engage in
anal, vaginal, and oral sex with a blonde woman whom the men paid.  C.H. testified that he did so because
Appellant threatened him and that the men snapped some pictures of him and the
woman.  He testified that when B.H. came
with them, the woman was not there.  He
also testified that one time, his sisters came too, but Appellant put them in
another room to watch television and they did not know what was going on.

C.H. testified that he
went over to Appellant=s friend=s house between ten and fifteen
times and that Appellant=s friend never did anything to
C.H., but that Appellant would continue to Amess with [C.H.]@ over there.





[5]Using an anatomically correct doll,
B.H. indicated that Aprivate parts@ meant the penis.





[6]Because of our discussion below
with regard to double jeopardy, we will not discuss the legal and factual
sufficiency pertaining to Appellant=s conviction for indecency with a child involving M.L.
based on contact with M.L.=s anus, or Appellant=s conviction for indecency with a child involving C.M.
based on exposure of Appellant=s genitals.  See
Tex. R. App. P. 47.1.





[7]Count five, alleging that on or
around July 13, 2003, Appellant induced B.H. into sexual performance, was
abandoned.





[8]We come to this conclusion based on
the date of the presentation of the indictment, January 28, 2005, and B.H.=s testimony that he was born in
1997 and the offenses occurred when he was about five years old.





[9]The limitations period for
indecency with a child and aggravated sexual assault is ten years from the
complainant=s eighteenth birthday.  See Tex.
Code Crim. Proc. Ann. art. 12.01(5) (Vernon Supp. 2006). 





[10]C.H. testified that Appellant told
him Ato suck [B.H.=s] penis and told [B.H.] to suck
[C.H.=s]@ and that, ultimately, he had to
put his mouth on B.H.=s penis Aonce or twice@ and that B.H. put his mouth on
C.H.=s penis Aabout once or twice.@ 
Desmarais testified that C.H. told her that Appellant Awould make [C.H.] and his brother
suck on each other=s penis, but that he never did
it.  He said his brother did suck on his
penis a couple of times.@ 
As long as the jury found that C.H. put his mouth on B.H.=s penis twice and B.H. put his
mouth on C.H.=s penis twice, this testimony was
legally sufficient to support all four chargesCtwo pertaining to C.H. and two
pertaining to B.H.





[11]The indictment was presented on
January 28, 2005.  C.H. testified that he
was born in 1993 and that the offenses began when he was about five or six
years old.





[12]Count two, alleging that Appellant
committed aggravated sexual assault by causing M.L.=s anus to contact Appellant=s penis, was abandoned.





[13]In a case in which the evidence
raises the issue of the defendant=s intent to arouse or gratify his sexual desire in the
course of committing the penetration element of sexual assault, the court
should submit to the jury the offense of indecency with a child as a lesser‑included
alternative to the offense of sexual assault. 
See Ochoa, 982 S.W.2d at 908. 
In Ochoa, the defendant was convicted of aggravated sexual
assault of a child and indecency with a child with both charges arising from a
single act.  Id.  When the evidence at trial shows that only
one offense was committed, the State may not seek conviction for two
offenses.  Id.





[14]The indictment was initially
presented on June 24, 2004, and then refiled on January 28, 2005.  M.L.=s mother testified that M.L. was born in 1991, and M.L.
testified that the offenses began when he was around eleven years old.





[15]C.M. testified that when he was
around thirteen, Appellant asked if he had ever been Ajacked off,@ asked him if he Awould like to suck [Appellant=s] dick,@ and pulled Appellant=s erect penis from his pants.





[16]The State argued that no limiting
instruction was necessary because  the
charged offenses were not extraneous, Appellant had requested to try the cases
together, and the evidence would overlap in the cases.





[17]Varelas involved the capital murder of a
two-year-old child.  45 S.W.3d at
629.  The State presented evidence of the
cause of death and abuse before death and five specific extraneous acts of
abuse of the child by the defendant.  Id.
at 630.  The complaint on writ of habeas
corpus was ineffective assistance of counsel because the defense attorney
failed to request limiting instructions. 
Id. at 631-32.  





[18]Trial court cause number 0957913R.





[19]Trial court cause number 0957926D.





[20]Trial court cause number 0961727D.





[21]Trial court cause number 0961726D.





[22]Trial court cause number 0961715D.